# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 22-0700V

| | |
|---|---|
| DANIELLE POLZIN,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: April 28, 2025 |

*Randall G. Knutson, Knutson & Casey Law Firm, Mankato, MN, for Petitioner.*

*Tyler King, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On June 22, 2022, Danielle Polzin filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following a tetanus vaccine she received on December 16, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner more likely than not suffered the residual effects of her injury for more than six months, that she has provided preponderant evidence of onset within forty-eight hours, and that she has satisfied all of

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

the other requirements of a Table SIRVA claim. Petitioner is therefore entitled to compensation under the Vaccine Act.

## I.    Relevant Procedural History

On September 28, 2023, about 15 months after the case was initiated, Respondent filed his Rule 4(c) Report opposing entitlement. *See* ECF No. 23. Respondent argues that Petitioner has failed to establish that her shoulder pain began within forty-eight hours of her vaccination, and that she cannot satisfy the statutory severity requirement because she did not see treatment for approximately one year after her initial treatment. Rule 4(c) Report at 5-7. Thereafter, Petitioner filed a Motion for Ruling on the Record and Memorandum ("Memo.") on November 30, 2023 and Respondent filed a response ("Resp.") on January 23, 2024. ECF No. 24-25, 27.

The matter is now ripe for adjudication.

## II.    Factual History

The parties agree that Petitioner had no history of left shoulder pain or dysfunction prior to vaccination. *See* Memo. at 1; Resp. at 2. Petitioner received a tetanus vaccine in her left deltoid on December 16, 2019, during a visit with her primary care provider ("PCP") in Mankato, MN. Ex. 3 at 1, Ex. 4 at 146-149.

On January 14, 2020 (29 days after her vaccination), Petitioner returned to her PCP practice with complaints of left upper arm pain from her tetanus shot. Ex. 4 at 143. She explained that the pain "started immediately" with the injection and that she "had quite a bit of pain" when walking out of the appointment." *Id*. She stated that "she has not injured her arm or shoulder in any way and said this occurred immediately after the injection." *Id*. On exam, she had tenderness to palpation and discomfort with abduction and internal rotation. *Id*. at 144. She was diagnosed with a post-vaccination reaction and rotator cuff tendinitis, encouraged to use ibuprofen, and referred to physical therapy. *Id*. at 144-145.

Petitioner thereafter had an initial physical therapy evaluation on February 13, 2020. Ex. 4 at 219. She stated that her symptoms began following a recent vaccination in mid-December 2019, with pain being "persistent . . . over the past few weeks." *Id*. at 220. On exam, she had reduced range of motion and positive impingement testing. *Id*. at 219. Treatment was planned for twice a week for eight weeks. *Id*. at 222. She returned for an additional two treatments on January 31, 2020 and February 13, 2020. *Id*. at 211-218. Petitioner states that she was ill and missed her last scheduled appointment on February 26, 2020, and then did not return for further physical therapy due to the Covid-19 Pandemic. Petitioner's Affidavit, ECF No. 26 at ¶5. She recalled that she was taught

exercises during her physical therapy sessions, which she continued to perform them at home during this time. *Id*. at ¶6.

On January 30, 2020, Petitioner had a consultation with an endocrinologist for her Graves disease. Ex. 4 at 135. She returned for follow up appointments on April 29, 2020 and July 29, 2020. *Id*. at 122, 129. On September 17, 2020, Petitioner saw her ophthalmologist for an eye exam on the recommendation of her endocrinologist. *Id*. at 116. Petitioner obtained follow-up care for her Graves disease on October 15, 2020, and January 21, 2021. Ex. 4 at 102, 107. These records do not mention Petitioner's shoulder pain.

On October 5, 2020, Petitioner saw her PCP, via telemedicine, due to a Covid-19 infection exposure. Ex. 4 at 112. Petitioner was diagnosed with Covid-19, and she recalls being "very sick at this time." ECF No. 26 at ¶7. The record does not mention shoulder pain.

Petitioner returned to her PCP on February 2, 2021 for an annual exam. Ex. 4 at 96. She now reported "ongoing pain" in her left shoulder after her tetanus shot more than a year before. *Id*. She stated that the physical therapy had helped, but she still had pain and limited range of motion. *Id*. On exam, Petitioner had full range of motion with pain and positive impingement testing. *Id*. at 99. She was referred to orthopedics. *Id*. at 100.

On February 24, 2021, Petitioner was evaluated in the sports medicine department. Ex. 4 at 92. Petitioner reported that she received a tetanus vaccine on 12/16/2019 and that "pain has been consistently present since 2019." *Id*. On exam, Petitioner had limited internal and external rotation and positive impingement testing. *Id*. at 93-94. X-rays were normal. *Id*. at 94. Petitioner was referred to physical therapy. *Id*. at 95.

Petitioner returned to physical therapy on March 5, 2021. Ex. 4 at 204. She completed ten sessions through June 3, 2021. *Id*. at 168-208.

Over six months later, Petitioner saw a new orthopedist on October 14, 2021. Ex. 5 at 4. She reported shoulder pain for approximately two years, which began "after receiving a tetanus shot in her left arm." *Id*. The doctor suspected biceps pathology and recommended a corticosteroid injection. *Id*. at 5. Petitioner continued to treat her shoulder pain through at least September 2022.

### III.   Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine

Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8; *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## IV.    Findings of Fact

### A.  *Severity*

To establish six months of residual effects in this case, Ms. Polzin must demonstrate that her symptoms more likely than not continued until at least June 16, 2020. There is no dispute that Petitioner sought treatment for her shoulder pain through February 13, 2020, but then did not seek treatment again for almost one year – until February 2, 2021. Respondent argues that "this large gap calls into question whether Petitioner's alleged vaccine injury lasted more than six months." Resp. at 7. Respondent also points to "six different medical examinations, including one with her PCP," during the gap that do not reflect Petitioner's shoulder pain. *Id*.

I agree that the record is thin on this issue, but I find there is preponderant support for the finding that Petitioner's symptoms likely continued for at least six months from onset. The record reveals that as of Petitioner's final PT visit in mid-February 2020 (Ex. 4 at 211), she had expected two more sessions, but they were missed due to illness. *See* Ex. 4 at 211; ECF No. 26 at ¶5. Thereafter, Petitioner did not continue to seek care for her shoulder pain at that time due to the Covid-19 Pandemic. ECF No. 26 at ¶5. Petitioner explained that, as healthcare worker, she was "asked to avoid over-taxing the healthcare system, to only utilize them if absolutely necessary." *Id*. She also noted that she "was required to quarantine at times due to working in a healthcare environment." *Id*. Petitioner maintains that during the gap in treatment for her shoulder, she continued to perform exercises she learned in physical therapy "to try to help with the pain and mobility issues." *Id*. at ¶6. I deem this a credible explanation for why she did not seek further treatment until the worst of the Pandemic had passed.

Further, the six intervening medical visits cited by Respondent were not necessarily occasions on which Petitioner would have been expected to complain of her shoulder problem. Four of those appointments (on April 29, 2020, July 29, 2020, October 15, 2020, and January 21, 2021) were with an endocrinologist for treatment of Petitioner's Graves disease, which requires ongoing management with medication. *See* Ex. 4 at 102, 107, 122, 129. A fifth appointment was with an ophthalmologist. *Id*. at 116. Neither of these specialists would reasonably be expected to treat Petitioner's shoulder pain. Petitioner's PCP visit on October 5, 2020 (conducted via telemedicine), was for treatment of Covid-19. Ex. 4 at 112; ECF No. 26 at ¶7. This was not a situation where an individual would be expected to report shoulder pain, particularly considering her understanding, as a healthcare professional, to seek care only when "absolutely necessary." *See* ECF No. 26 at ¶5.

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on this issue. (Of course, the fact that Petitioner clearly *could* have obtained shoulder treatment in the gap timeframe undercuts damages severity – and it is something I will factor in when determining damages in this case).

### B. *Onset*

Respondent next argues that Petitioner has not established Table onset because she "did not seek care for shoulder pain until twenty-nine days" after her vaccination, and "has not provided any proof that she missed work between her vaccination and her first treatment. Resp. at 9. Respondent quotes Petitioner's affidavit, where she states "it is unclear what other evidence is able to be provided, other than my word of my experience." *Id*. However, Respondent omits the remainder of Petitioner's affidavit statement – where she referenced the record of her January 14, 2020 appointment, during which she reported immediate onset of shoulder pain after vaccination. *See* ECF No. 26 at ¶4. The record of that appointment includes Petitioner's report that the pain "started immediately" with the injection, and that "ever since has been very sore there and that "she has not injured her arm or shoulder in any way and said this occurred immediately after the injection." Ex. 4 at 143. Petitioner also reported that her symptoms began on December 16, 2019, the day of her vaccination, on her intake form for physical therapy. Ex. 4 at 224. Both of these records clearly corroborate onset with in 48 hours after vaccination.

Further, Petitioner consistently related her shoulder pain to her vaccination during her treatment and there is no evidence suggesting a different onset. *See e.g.*, Ex. 4 at 92, 96, 219; Ex. 5 at 4. Accordingly, I find there is preponderant evidence to conclude that the onset of Petitioner's pain began within forty-eight hours of her vaccination.

## V.     Ruling on Entitlement

### A.     *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that her pain began within 48 hours after her vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B.     *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements

of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a tetanus vaccine in her left deltoid on December 16, 2019 in Mankato, Montana. Ex. 3 at 1; Ex. 4 at 146-149; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. *See* Ex. 2 at ¶9; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master